NOT DESIGNATED FOR PUBLICATION

No. 114,536

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ALBERT E. RICHMOND,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI A. BOLTON FLEMING, judge. Opinion filed November 23, 2016. Affirmed.

*Geoffrey Clark*, of Mason & Clark, LLC, of Fort Scott, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON and ARNOLD-BURGER, JJ.

*Per Curiam*:  A jury convicted Albert Eugene Richmond of first-degree murder in the shooting death of Tyrone Owens. Richmond filed a K.S.A. 60-1507 motion arguing ineffective assistance of counsel because his trial attorney, Michael Gayoso, failed to properly object to testimony that years before the shooting Richmond had said he "robbed and killed" people. Gayoso made no contemporaneous trial objection to the statement as improper character evidence under K.S.A. 60-447 or as unfairly prejudicial. Richmond lost this motion on appeal because his appellate counsel, Sara Beezley, failed to properly brief the issue. Richmond filed a second K.S.A. 60-1507 motion claiming Beezley was ineffective for making no argument that the admission of the statement tainted the jury

1

verdict—an essential component of a 60-1507 claim based on ineffective assistance of counsel. The district court denied his motion, and Richmond appeals. We affirm as any possible deficiency in the performance of Gayoso or Beezley resulted in no legal prejudice to Richmond in light of the compelling evidence of his guilt.

The Kansas Supreme Court affirmed Richmond's convictions on direct appeal in *State v. Richmond*, 289 Kan. 419, 212 P.3d 165 (2009) (*Richmond I*). The following facts are taken directly from the Supreme Court's opinion:

"On October 21, 2006, defendant Albert Richmond, Rayland Brown, Ramone Hester, and Malcolm Jackson traveled to a convenience store in Pittsburg so Hester could buy marijuana from Tyrone Owens. Jackson drove the car, with Richmond in the front passenger seat and Hester and Brown in the back.

"Upon arrival, Hester called Owens from a pay phone. When Owens arrived, Hester got into Owens' car and it pulled away. According to Jackson, Richmond told him to follow. Owens stopped a block later. After Hester purchased $20 worth of marijuana, he got out and started walking back toward the Jackson car. Jackson testified that Richmond then handed him a .40 caliber handgun and told him to 'go get' Owens. Once Jackson neared Owens' passenger side window, however, Owens drove away. Jackson testified that he got back in his car and tossed the handgun at Richmond, who told him to follow Owens.

"After pursuing for a couple of blocks, Jackson cut Owens off by swerving in front of his car. Jackson and Richmond then got out and approached Owens' car. Jackson testified that he tried to reach in and turn the ignition off so he could take Owens' money. As Jackson reached, Richmond shot through the front windshield and struck Owens in the chest. While Owens put the car in reverse to get away, Jackson grabbed the steering wheel. Owens' car then got stuck on a fire hydrant. According to Jackson, Richmond fired several more shots, and Owens was hit twice more. One was a head shot which instantly killed him.

"While Jackson identified Richmond as the shooter, both Hester and Brown testified that they ducked when they heard shots and saw nothing more happening outside of the car. Richmond did not testify.

"After the shooting, Hester moved into the driver's seat and began to drive once Jackson and Richmond got back in the car. Hester testified that after the shooting, Jackson was carrying a different handgun from what he had been carrying earlier. Jackson also got some of Owens' blood on his arm.

"Owens was a well-known drug dealer. Officers found $25 in his left hand, $15 in his pocket, and a small baggy of drugs on his person. They also found a glove containing Richmond's DNA at the scene. Richmond was arrested in Miami, Florida, approximately 10 days later.

"In exchange for their testimony in Richmond's jury trial, the three other men received plea deals. Jackson pled guilty to one count of conspiracy to commit aggravated robbery, one count of attempted aggravated robbery, and one count of aiding a felon. He testified that he expected to serve 8 1/2 years in prison. Hester pled guilty to attempted aggravated robbery and testified that he expected to receive 4 years in prison. All charges against Brown were dropped. The jury convicted Richmond of first-degree premeditated murder, and the court later sentenced him to the hard 50." 289 Kan. at 422-24.

At trial, the State presented a strong case against Richmond. Jackson was the only witness who claimed to have actually seen Richmond shoot Owens. Both Hester and Brown testified they ducked in the car and did not see the shooting. Brown testified that he saw both Jackson and Richmond get out of the car before he ducked. Hester testified, however, that Richmond got out of the car with a gun. Richmond raised his arm and pointed the gun at Owens' vehicle. Once Richmond raised his arm, Hester heard a shot and ducked.

Forensic evidence also corroborated the testimony provided by Jackson and Hester. After the shooting, Jackson's shirt was covered in blood. Jackson claimed this was because he was attempting to turn off the ignition in Owens' car when Owens was shot. A forensic pathologist called by the State testified that one of the gunshot wounds to Owen's head likely would have resulted in significant blood flow—consistent with the blood on Jackson's clothing if he were trying to turn off the car's ignition, placing him close to Owens. The pathologist found no stippling around the gunshot wounds, meaning

3

the shooter was some distance from Owens. Again, the lack of stippling would be consistent with Jackson's account that Richmond shot Owens. Additionally, many of the gunshots were identified as coming from the same gun, corroborating Jackson's testimony that Richmond was the only shooter.

A local resident also testified at trial. At the time of the shooting, she was sitting on her porch smoking. She heard gunshots and turned to look in the direction of the sound. She saw someone get into the passenger side of a white car, and the car took off. All three codefendants testified Richmond was riding in the passenger seat of the car.

Other evidence also bolstered Richmond's conviction. Multiple witnesses testified that Richmond had a dominant personality, while Jackson was more submissive. Richmond's DNA was found on a glove left at the scene of the murder. There was also testimony from numerous witnesses regarding Richmond's behavior after the shooting that would support the State's case. After the shooting, Richmond calmly directed Jackson, Hester, and Brown to Richmond's girlfriend's house. Once there, Richmond was playing and singing with his daughter, seemingly unperturbed by the night's events. He also gave instructions to others on concealing the crime and ran away to Florida, where law enforcement eventually apprehended him.

During the trial, the State also called a KBI agent to testify that 2 years before the killing, Richmond told her during a drug investigation that he "robbed and killed" by way of explaining he would not have been involved in cocaine trafficking. The jurors were not informed about why the agent interviewed Richmond; they only heard some of what he said to the agent. Gayoso fought unsuccessfully before trial to exclude the statement as evidence for multiple reasons. During trial, Gayoso again objected to the KBI agent's testimony about Richmond's statement. But he did not then object on the grounds the statement was inadmissible character evidence under K.S.A. 60-447 or that the impermissible prejudice of the statement substantially outweighed its probative value, see

4

*State v. Logsdon*, 304 Kan. 3, 34, 371 P.3d 836 (2016) (court may exclude unduly prejudicial evidence). The district court admitted the statement.

On direct appeal, Richmond argued the I-rob-and-kill statement was improperly admitted as character evidence or as evidence of his commission of other crimes and, in any case, was unfairly prejudicial. The Kansas Supreme Court rejected the other-crimes argument on the merits and refused to consider the other grounds because Gayoso had not raised them in the contemporaneous objection he made when the statement was offered at trial. *Richmond I*, 289 Kan. at 427-30; see K.S.A. 60-404 (party challenging evidence at trial must lodge "timely" objection "mak[ing] clear the specific ground").

Richmond timely filed his first 60-1507 motion to set aside the conviction. To succeed on a 60-1507 motion, a criminal defendant must show both that his or her lawyer's representation fell below a level of reasonable competence required by the right to counsel guaranteed in Sixth Amendment to the United States Constitution and that the outcome of the case likely would have been different had the lawyer performed competently. See *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014); *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 (2006). In presenting Richmond's first 60-1507 motion, Beezley argued, among other things, that Gayoso should have objected to the I-rob-and-kill statement as impermissible character evidence and as causing unfair prejudice. The district court denied the 60-1507 motion. On appeal, Beezley repeated her argument about the inadequacy of Gayoso's trial objection, but she never asserted or explained how the admission of the statement prejudiced Richmond during the murder trial. In other words, she failed to address the second part of the *Strickland* test—how the exclusion of the statement likely would have affected the verdict. This court affirmed the denial of the 60-1507 motion precisely because Beezley didn't fully brief the habeas corpus claim. *Richmond v. State*, No. 106,885, 2012 WL 5366932, at *4 (Kan. App. 2012) (unpublished opinion).

5

Richmond then filed his second 60-1507 motion—the one we have before us—alleging Beezley inadequately represented him because she failed to make any argument as to why Gayoso's limited trial objection to the I-rob-and-kill statement tainted the jury verdict. After appointing a new lawyer for Richmond and holding an evidentiary hearing, the district court determined that in light of the strength of the government's admissible evidence against Richmond in the murder trial, the statement was not a material factor in the outcome. Therefore, according to the district court, the legal representation of both Beezley and Gayoso did not result in any legal prejudice to Richmond and he was entitled to no habeas corpus relief. Richmond has now appealed that ruling.

A defendant's claim of ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, we must determine whether substantial competent evidence supports the district court's factual findings and whether those factual findings support the court's legal conclusions. We apply a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

Generally, courts determine counsel's performance was deficient before proceeding to the second prong of the *Strickland* standard. But that is not invariably so, and a reviewing court may deny relief based on the absence of prejudice to the defendant without deciding the constitutional adequacy of the legal representation. See *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *Sola-Morales*, 300 Kan. at 886. We decline to explore the adequacy of Gayoso's and Beezley's representation in this case, particularly given the complex nature of the issues surrounding Gayoso's objections to the I-rob-and-kill statement. We simply assume for the sake of argument that both Gayoso and Beezley performed deficiently. Richmond cannot establish these failures prejudiced him.

6

The cornerstone issue in Richmond's second 60-1507 proceeding is this: Was Beezley's failure to brief the prejudice prong of *Strickland* in the appeal of the first 60-1507 motion itself prejudicial? It would have been if Beezley could have offered a winning argument as to why the result of the jury trial likely would have been different had the I-rob-and-kill statement been excluded as evidence. But as the district court ruled, that is not the case. As we have outlined, the State presented overwhelming evidence against Richmond at trial. Even assuming Gayoso's performance failed the first prong of the *Strickland* standard, the admission of the I-rob-and-kill statement was inconsequential to the jury's verdict. Accordingly, Richmond would not have prevailed in his original 60-1507 motion even if Beezley had adequately briefed the appeal, and that, in turn, precludes any relief in this sequential motion.

Affirmed.