NOT DESIGNATED FOR PUBLICATION

No. 119,481

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN ALEJANDRO FLORES,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed September 27, 2019. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.


PER CURIAM: Juan Alejandro Flores appeals following his convictions of aggravated burglary, attempted aggravated robbery, aggravated battery, and criminal possession of a weapon. Specifically, Flores argues the district court erred by allowing the State to introduce irrelevant and highly prejudicial evidence into trial and by failing to provide a limiting instruction. Finding no error, we affirm.

1

On the morning of January 13, 2017, Sandra Torres was getting ready to leave for work while her boyfriend, Alan Ortiz, remained in bed. Torres' young son was in the living room watching television. Due to the cold weather, Torres went outside to start her car and then went back inside while her car warmed up. Torres shut the back door leading to the kitchen but did not lock it. As Torres was getting something out of the refrigerator, she saw the kitchen doorknob turn. Before Torres could reach the door, a man wearing black clothes and a mask over his face entered the house. The man pointed a gun at Torres' face and ordered her to get on the floor. Two more men with guns then entered the house. Like the first intruder, one of the men was wearing a mask that fully covered his face and head. The third man was wearing a mask that only covered the lower part of his face, from the bridge of his nose to his cheeks.

After hearing the commotion, Ortiz came out of the bedroom. The three men pointed their guns at Ortiz and said that they wanted money. One of the men reached for a chain around Ortiz' neck. After Ortiz pushed the man's hand away, the man hit Ortiz in the back of the head with his gun and shot Ortiz. The three men then ran out of the house. Torres immediately called 911 and repeatedly identified "Alex" as the shooter.

Wichita Police Officer Charles Byers responded to the residence. When Byers arrived he made contact with Torres, who advised the officer that Alex Flores had shot her boyfriend. Torres was frantic, animated, and emotional. Byers went inside the house and observed Ortiz laying on his back outside a bedroom. Ortiz had blood near his head but was awake. When Byers asked what had happened, Ortiz said, "Alex shot me," and explained that the shooter had wanted his chain. Ortiz advised the officer that the three male intruders were all wearing masks but that he knew Alex Flores was the shooter. Ortiz said he knew Flores through Torres.

Wichita Police Officer Rob Thatcher also spoke with Ortiz at the scene. Ortiz again identified Alex Flores as the individual who shot him. Ortiz reiterated that he knew Flores through Torres and that he recognized a tattoo on the front of Flores' neck.

Law enforcement ultimately identified Juan Flores, who also went by the name Alex, as the suspect. The State charged Flores with one count each of aggravated burglary, attempted aggravated robbery, aggravated battery, and criminal possession of a weapon by a convicted felon. Flores' first trial resulted in a mistrial because the jury could not reach a unanimous verdict.

The case proceeded to a second trial, where Torres testified she was "100 percent sure" that Flores was the shooter. Torres said she noticed a tattoo under the shooter's eye and recognized him as Flores from previous encounters and social media contact. Ortiz testified that he was "very confident" in identifying Flores as the individual who shot him. Ortiz said he recognized Flores by his eyes and tattoos. Ortiz noted that he had never actually been introduced to Flores but that he had been around Flores on multiple occasions before the shooting and had seen pictures of Flores on social media through Torres. Ortiz denied identifying Flores as the shooter based on Torres' identification.

The jury found Flores guilty as charged. The district court sentenced Flores to a controlling term of 249 months in prison.

ANALYSIS

Flores raises four issues on appeal: (1) the district court erred in allowing the State to introduce into evidence at trial an irrelevant and prejudicial photograph from his Facebook account; (2) the district court erred in failing to issue a limiting instruction regarding the jury's consideration of his prior felony adjudication; (3) the cumulative effect of these alleged errors violated his constitutional right to a fair trial; and (4) the

3

district court violated his constitutional rights by imposing his sentence without requiring the State to prove his criminal history to a jury beyond a reasonable doubt. We address each of Flores' issues in turn.

## 1. *Facebook picture*

Appellate courts review a district court's decision to admit evidence using a two-step process. First, we must determine whether the evidence is relevant. Generally, all evidence is admissible if relevant. K.S.A. 60-407(f). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). This definition encompasses two elements:  whether the evidence is material and whether the evidence is probative. Evidence is material when the fact it supports is in dispute and is significant under the substantive law of the case. Evidence is probative if it furnishes, establishes, or contributes toward proof. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). This court reviews the materiality of evidence de novo, while we review the district court's decision regarding the probative value of evidence for abuse of discretion. *State v. Boleyn*, 297 Kan. 610, 622, 303 P.3d 680 (2013).

Even if evidence is relevant, a district court may exclude it if the court determines the probative value of the evidence is outweighed by its potential for producing undue prejudice. K.S.A. 60-445. We review this aspect of the test for abuse of discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Having set forth the standard of proof and the standard of review, we review the evidence in some detail as it came in during trial.

4

Before the first trial, the State filed a notice of its intent to present evidence of gang affiliation. In response, Flores filed a motion in limine seeking to prevent, in part, the State from introducing into evidence photographs and pictures from Flores' Facebook page. In the motion, Flores highlighted the fact that Torres showed law enforcement a picture from his Facebook account where he was wearing a bandana-type mask covering his lower face and that Torres told law enforcement that it was the same mask Flores wore at the time of the alleged crimes. Flores argued the picture had "little to no probative value" because the mask in the Facebook picture was different from the mask Torres previously had described seeing during the alleged crimes. Flores also argued the picture was highly prejudicial because it was accompanied by racist and profane text and showed him making "what can be interpreted as gang signs." The State later withdrew its notice of intent to introduce gang evidence and advised that it would not seek to introduce photographs or pictures from Flores' Facebook page.

Before the second trial, the State renewed its motion to introduce evidence of gang affiliation. The State's motion did not refer to the Facebook picture. The district court denied the motion.

At the second trial, defense counsel extensively cross-examined Torres on alleged inconsistencies in her descriptions of Flores' mask and tattoos, including the fact that Torres told law enforcement that Flores had tattoos under both eyes. Defense counsel also pointed out that Torres told law enforcement that Flores was wearing a mask that covered his face and had one large cutout for his eyes, but she testified on direct examination that the mask only covered the lower portion of Flores' face.

When it was time for the prosecutor to examine Torres on redirect, defense counsel requested a bench conference outside the hearing of the jury. At the bench conference, the prosecutor requested permission to introduce into evidence the photograph from Flores' Facebook page. In support of this request, the prosecutor noted

5

that Flores' defense centered on eyewitness identification. The prosecutor further noted that Torres showed law enforcement the picture from Flores' Facebook page and told the officers that Flores was wearing the same mask in the picture that he wore during the home invasion. The prosecutor pointed out that the picture "appears to be a reverse image because in that photograph [Flores' tattoo is] under his left eye." Based on these facts, the prosecutor argued the photograph was relevant to show why Torres might have been confused about what Flores' tattoo depicted and whether it was on the left or right side of his face. The prosecutor informed the court that the State had cropped the photograph to remove any unduly prejudicial material, including gang references and profane language. The prosecutor then presented both the original and cropped photographs to the court for review. In response, defense counsel argued that Torres' description of the mask on direct examination was different from the description of the mask she provided in her pretrial statement. Counsel also noted that the tattoo pictured in the photograph was inconsistent with the description Torres had provided to police.

After taking the matter under advisement, the district court held that the cropped photograph from Flores' Facebook page was admissible. Specifically, the court found that the photograph was relevant because Torres had testified that the mask Flores wore in the photograph was the same mask that he wore during the alleged crimes. The court noted that the picture showed Flores wearing the mask in the same way that Torres and Ortiz described the shooter wearing it during the crimes. The court found it "very compelling" that the picture was a reverse image and showed the tattoo under Flores' left eye, when the tattoo was actually under his right eye. Finally, the court noted that Flores had displayed the photograph publicly. After finding the photograph was relevant, the court moved on to the issue of prejudice. Noting that the photograph had been cropped to remove any gang references and profane language, the court found the probative value of the photograph outweighed any prejudice, especially because introduction of the cropped photo did not preclude Flores from asserting his theory of defense: that he was not the

6

shooter. For all of these reasons, the court held that the State could use the photograph so that Torres could explain her earlier statement that Flores had a tattoo under his left eye.

After the bench conference, Torres testified that she had attempted to identify the shooter for law enforcement by accessing Flores' Facebook page on her phone. Torres testified that the photograph showed Flores wearing the same mask that he wore during the home invasion and showed part of his tattoos. Torres said that when she was asked to describe Flores' tattoos, she already had looked at his picture on her phone. Over defense counsel's objection, the district court introduced the cropped photograph into evidence. As the photograph was displayed for the jury on a screen, Torres testified that the mask Flores wore in the picture was the same mask that he wore when he shot Ortiz. Torres also agreed that the tattoo on Flores' left cheek in the picture appeared to be the same tattoo "that's on his right cheek today."

a. *Relevance*

Under the first step of our analysis, we address whether the evidence introduced by the State was relevant. As we already have said, evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). The identity of the shooter was the only disputed issue at trial and was obviously significant to the outcome of the case. Torres showed the photograph to law enforcement in an attempt to identify the shooter and the mask he wore during the home invasion. The photograph was both material and probative as to the disputed issue of the shooter's identity. As a result, the photograph was relevant.

Flores asserts that the photograph was not relevant because the mask in the picture (which only covered the lower half of his face) did not match the description that Torres first provided to law enforcement (that the shooter's mask covered his entire face except for a cutout for both eyes). Contrary to Flores' argument, however, any inconsistencies in

Torres' description of the mask go to the weight of the evidence and not to its admissibility. Indeed, defense counsel elicited testimony about Torres' inconsistent descriptions of the mask during cross-examination and highlighted these inconsistencies during closing argument. The jury had the opportunity to weigh Torres' trial testimony about the photograph against her prior statements to law enforcement.

Flores also suggests that because Torres did not explicitly testify that her mistaken assertion about Flores also having a tattoo under his left eye was due to the "mirror image" of the photograph, the district court's decision to allow the State to introduce the photograph on these grounds was too speculative. But Flores' argument is contrary to the record and ignores Torres' testimony on redirect examination. After the prosecutor displayed the photograph to the jury, Torres testified the photo appeared to show Flores with a tattoo on his left cheek. Torres further testified the tattoo in the photograph looked like the same tattoo that, in person, was actually located on Flores' right cheek. Finally, Torres testified she already had looked at the photograph when she told law enforcement that she thought Flores had tattoos on both cheeks. Torres' testimony directly supports her contention that the photograph caused her to mistakenly believe that Flores also had a tattoo on his left cheek. The district court did not err in determining that the photograph was relevant.

b. *Undue prejudice*

Even if evidence is relevant, a district court has discretion to exclude it when the court finds its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. Flores argues that although he created and displayed the photograph for public view, he did not want the jury to view it when deciding his guilt. To that end, Flores claims that the photograph was inflammatory, suggestive, and resulted in undue prejudice because it portrayed him as a "masked bandit, a scary young man, a criminal."

8

In response, the State alleges Flores failed to preserve this argument for appeal because he did not object to the photograph on these specific grounds at trial. K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016).

At the bench conference regarding whether the State would be permitted to introduce the photograph into evidence, defense counsel argued that the mask in the photograph did not match Torres' prior description and that Torres had provided inconsistent statements about Flores' tattoos. Counsel did not allege the photograph was prejudicial. When the district court granted the State's request to introduce the photograph into evidence, defense counsel objected based "on previous arguments." Given Flores' failure to raise the prejudice argument below, he has not preserved the argument for appeal. See *State v. Richmond*, 289 Kan. 419, Syl. ¶ 4, 212 P.3d 165 (2009) (defendant cannot object to admission of evidence on one ground at trial and then assert another ground on appeal).

But even if Flores had properly preserved this argument, he still would not be entitled to relief. The record does not support Flores' claim that the probative value of the photograph is outweighed by its potential for producing undue prejudice. The photograph shows Flores' face and part of his arm. He is wearing a baseball cap, a watch, and a black mask that covers the lower part of his face from the nose down. A tattoo is visible on what appears to be Flores' left cheek. The photograph does not show Flores engaging in criminal activity. The mere fact that a mask may be used to conceal a person's identity during the commission of a crime does not, by itself, create prejudice. And the record reflects that the State cropped the original photograph to remove any material that could have potentially created the risk of undue prejudice. The uncropped version of the photograph included a racist and profane comment below Flores' picture, and a banner at the top of Flores' Facebook page contained images of well-known movie and television

9

gangsters, at least one of whom is holding a gun. The State also eliminated a reference to Flores' nickname that was visible in the original uncropped photograph, as well as anything that could be interpreted as a gang sign. By only admitting the cropped photograph into evidence, the district court eliminated any risk of undue prejudice. See K.S.A. 60-445.

In sum, the photograph was probative because it showed Flores' mask and tattoo, which were critical to the disputed issue of the shooter's identity. The State removed any potential for undue prejudice by cropping the photograph to show only evidence that was directly at issue in the case. Thus, the district court did not abuse its discretion in determining that the probative value of the photograph was not outweighed by its potential for undue prejudice. The district court properly allowed the State to introduce the photograph into evidence.

2. *Limiting instruction*

At trial, the parties stipulated that Flores had a prior felony adjudication that prohibited him from possessing a weapon on the date of the crimes at issue in this case. Flores argues the district court should have given a K.S.A. 60-455 limiting instruction on the evidence in the stipulation. Flores claims that the lack of an instruction informing the jury it could consider the prior adjudication only to satisfy the elements of possession of a weapon by a convicted felon constituted clear error.

In addressing a claim of error in the giving or failing to give a jury instruction, appellate courts analyze whether the jury instruction is legally and factually appropriate and, if so, whether the error is harmless. *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 516, 286 P.3d 195 (2012). Flores concedes that he did not request a limiting instruction or object to the lack of a limiting instruction at trial. Flores' failure to do so does not prevent him from raising this issue on appeal but requires this court to review the instructional

issue under the clearly erroneous standard. K.S.A. 2018 Supp. 22-3414(3); *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). To establish a clearly erroneous instruction error, the defendant must firmly convince the court the jury would have reached a different result without the error. *State v. Solis*, 305 Kan. 55, 64-65, 378 P.3d 532 (2016).

K.S.A. 2018 Supp. 60-455 generally bars the admission of evidence of a defendant's prior crimes or civil wrongs. When such evidence is admitted for other purposes, a limiting instruction is required. *State v. Barber*, 302 Kan. 367, 376, 353 P.3d 1108 (2015). Although our Supreme Court historically has treated stipulations to prior convictions or adjudications as outside the scope of K.S.A. 60-455, these decisions preceded its opinion in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006). See *State v. Sims*, 308 Kan. 1488, 1506, 431 P.3d 288 (2018), *petition for cert. filed* April 29, 2019. In *Gunby*, our Supreme Court held that the "lines of cases allowing admission of [evidence of other crimes and civil wrongs] independent of K.S.A. 60-455 are contrary to long-held common law and the text of the statute itself." 282 Kan. at 49.

Assuming that, under *Gunby*, a limiting instruction would have been both legally and factually appropriate in this case, Flores still must convince us that the jury would have reached a different result if it had been given such an instruction. See *Solis*, 305 Kan. at 64-65. We are not convinced. The evidence of Flores' guilt was strong. Both Torres and Ortiz immediately and consistently identified Flores as the shooter in their statements to law enforcement and in their testimony at trial. Any inconsistencies in their statements were pointed out during cross-examination and closing argument. The stipulation merely told the jury that Flores had a prior felony adjudication that prohibited him from possessing a weapon on the date of the crimes at issue. It did not specify the crime or otherwise provide details of the offense. For these reasons, we are not firmly convinced that the jury would have reached a different result if a limiting instruction had been issued.

11

3. *Cumulative error*

Flores claims the cumulative effect of the errors alleged above deprived him of his constitutional right to a fair trial. When a party argues that the cumulative impact of alleged errors is so great that they result in an unfair trial, this court aggregates all errors and, even if those errors individually would be considered harmless, analyzes whether their cumulative effect is so great that they collectively cannot be found harmless. *State v. King*, 297 Kan. 955, 986, 305 P.3d 641 (2013). In undertaking such an analysis, this court reviews the entire record and exercises unlimited review. *State v. Sean*, 306 Kan. 963, 993, 399 P.3d 168 (2017).

Because Flores has not established that any errors occurred in district court, we necessarily deem Flores' cumulative error argument to be without merit. See *State v. Johnson*, 304 Kan. 924, 956, 376 P.3d 70 (2016).

4. *Proving criminal history*

Flores asserts that the district court violated his constitutional rights by using his prior criminal history to increase his sentences without first presenting the information to a jury. See *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Flores acknowledges that this issue has been decided adversely to his position in *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002) (use of criminal history to enhance sentence not unconstitutional). Because there is no indication that our Supreme Court is departing from its position in *Ivory*, we are duty bound to follow it. See *State v. Watkins*, 306 Kan. 1093, 1094, 401 P.3d 607 (2017) (reaffirming *Ivory*); *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015) (Court of Appeals duty bound to follow Supreme Court precedent). Consequently, Flores' argument provides no basis for relief.

Affirmed.