NOT DESIGNATED FOR PUBLICATION

No. 123,958

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MAGGIE BUTLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed May 20, 2022.
Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before BRUNS, P.J., CLINE, J., and JAMES L. BURGESS, S.J.

PER CURIAM: Maggie Butler had sex with S.L., the 15-year-old son of her best
friend, after the boy had been drinking at a party. She was 37 years old at the time. After
a jury convicted her of aggravated indecent liberties with a child, Butler sought both a
dispositional and durational sentencing departure. The district court denied her a
dispositional departure, but it granted her a durational departure and sentenced her to 48
months in prison.

1

Butler claims the court should have granted her a dispositional departure since the boy initiated the encounter that evening and she has a limited criminal history. She contends she should have been given probation, thus "sav[ing] prison space for more violent offenders," and that giving her probation would better promote her rehabilitation and reduce recidivism. And she alleges the district court erred by failing to declare a mistrial, sua sponte, based on the prosecutor's questions during Butler's cross-examination. After review of the record and governing law, we find no abuse of discretion in either instance. We affirm Butler's sentence.

FACTS

Butler and S.L.'s mother, D.B., were childhood friends. In 2016, Butler and D.B. reconnected after Butler moved back to Kansas. Butler often helped D.B. by taking care of her children, including S.L. The children called Butler "Aunt Maggie."

At some point in 2017, D.B. invited Butler to join her relationship with D.B.'s common-law husband, D.M. This three-way sexual relationship lasted for about a year. Eventually, D.B. and D.M. broke up, but D.M. continued seeing Butler without D.B.'s knowledge.

In September 2018, while looking through S.L.'s phone, D.B. discovered text messages between S.L. and Butler sent earlier that month. In these texts, which were exchanged between 2 and 3 a.m., S.L. told Butler he wanted to have sex with her. He admitted he had never had sex and was shy to try it with his girlfriend. He said he thought it would be "easier to do it with someone who could help" him. Butler then invited him over to her house. After approximately 40 minutes, S.L. texted Butler again asking her: "[H]ow was it," and "was it a normal size or like what." Butler responded by texting: "You did good. You have nothing to worry about," and "you are a normal size and you did great." Butler then followed up by telling S.L.: "This has to stay between us for real."

2

D.B. reported these texts to the police, and Butler was charged with aggravated indecent liberties with a child.

At Butler's jury trial, S.L. testified that during the 40-minute gap in the text message exchange, he walked to Butler's house and met her on the back porch, where they spoke for a while before going inside and having sex in her bedroom. He said he had wanted to have sex with Butler because he was a virgin. He was considering having sex with his girlfriend but was nervous he would not perform well. He testified he wanted Butler to show him "what to do and the best things to do." S.L. provided a detailed description of the events leading up to, during, and after the sexual encounter. He also stated that on this night his family had been drinking and his grandparents had given him alcohol. He admitted that since he was drunk, he felt emboldened to proposition Butler, something he would not have otherwise tried to do.

Screenshots of the text messages between S.L. and Butler were admitted into evidence and reviewed by the jury.

S.L. admitted he first denied having sex with Butler when speaking with the detective. He said he never wanted Butler to go to jail for what she had done. He admitted he had warned Butler that his mother had reported the texts to the police and initially cooperated with Butler to try to cover it up by exchanging other text messages that made it seem like the two did not have sex. He testified that part of this cover-up included trying to make it seem like his mother was making it all up to try and get "everyone to hate" Butler and D.M.

Butler, meanwhile, denied having sex with S.L. She claimed S.L. merely showed her his penis to confirm that it was normal. She said on that night she and D.B.'s family had been celebrating together and drinking heavily. She testified that when S.L. started texting her, she was on her back porch with her brother and D.B. She said S.L. then

3

walked over, at which point D.B. went inside, leaving only Butler, her brother, and S.L. on the porch. Butler testified that after a short conversation, S.L. then showed his penis to her and her brother. She claimed S.L. wanted reassurance because he was concerned his girlfriend would laugh at him since he was uncircumcised.

Butler insisted that in the text messages between her and S.L., she was not referring to any sexual contact but was only commenting on S.L.'s penis and reassuring him that he would do fine in his first sexual encounter.

Butler's theory of defense focused on the love triangle between Butler, D.B., and D.M. and the fact that S.L. first denied anything happened when confronted by his mother and others. Butler argued that S.L. was then pressured into changing his story by the police and his mother, who was intensely jealous of Butler because of her continuing relationship with D.M. and was intent on getting back at Butler.

Ultimately, the jury found Butler guilty. Butler later moved for a dispositional departure to probation or, in the alternative, a durational departure. The district court denied Butler's motion for a dispositional departure but granted a durational departure and sentenced Butler to 48 months in prison with lifetime postrelease supervision.

*The district court did not err in denying Butler a dispositional departure.*

Butler first argues the district court erred in denying her motion for a dispositional departure. We review the district court's decision for an abuse of discretion. *State v. Boswell*, 314 Kan. 408, 413, 499 P.3d 1122 (2021). Butler must show the district court's decision was (1) arbitrary or unreasonable—i.e., no reasonable person would have taken the view adopted by the district court; (2) based on an error of law; or (3) based on an error of fact. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019). Butler, as the

4

party asserting an abuse of discretion, bears the burden of proof. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Under K.S.A. 2020 Supp. 21-6815(a), a district court must impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to depart from the guidelines. If a departure sentence is appropriate, a district court may depart from the sentencing guidelines. K.S.A. 2020 Supp. 21-6818(a). The Legislature has provided a nonexclusive list of mitigating factors a district court may consider in determining whether substantial and compelling reasons justifying a departure exist. K.S.A. 2020 Supp. 21-6815(c)(1).

A district court may find that the same set of mitigating and aggravating factors support granting a durational departure but not a dispositional departure. And in reviewing a district court's weighing of these factors, an appellate court does not mechanically tally the factors weighing for and against the departure but looks to see whether reasonable minds could reach the same conclusion as the district court. See *State v. Ballard*, 289 Kan. 1000, 1008-10, 218 P.3d 432 (2009).

In claiming the district court abused its discretion in refusing to grant her probation, Butler notes that the district court found substantial and compelling reasons existed to support a durational departure. That is, she argues the factors which support the durational departure also support a dispositional departure. Given the existence of these factors, Butler argues that no reasonable person could conclude that probation was not warranted.

The district court identified the substantial and compelling reasons supporting its grant of a durational departure but not a dispositional departure:  (1) The commission of the crime was easier because S.L.'s family had been drinking and provided S.L. with alcohol; (2) S.L. testified that he initiated the encounter and Butler did not force herself

on S.L.; (3) S.L. was a child and because of his immaturity did not appreciate or understand what he was asking Butler to do, especially given the fact he was inebriated, and Butler should have rebuked his advances; (4) S.L., who was now an adult, did not want to see Butler punished, but at the time he was possibly unable to understand the significance of what Butler had done to him because of his age and background; (5) S.L. was only 10 days away from being 16 when the offense occurred, but Butler was still more than 20 years his senior and should have recognized how his difficult life history made him more vulnerable to trauma; and (6) Butler had a very light criminal history.

In sum, the district court noted that while the presumptive prison sentence may be disproportionate to the facts of the case, the offense was still a serious and intolerable one, and incarceration was thus warranted.

We cannot say that no reasonable person could agree with the district court's decision. While the district court acknowledged there were mitigating factors which distinguished Butler's case, Butler still committed a serious offense. As the State notes, the victim was the 15-year-old son of Butler's close friend, who was himself close enough to call Butler "Aunt Maggie." Butler knew S.L. had been drinking, and she testified she knew he was embarrassed about having sex. The district court found Butler violated her position of trust and took advantage of S.L. while he was in a vulnerable state. It pointed to the significant age gap between Butler and S.L., as well as her awareness of his age and the serious consequences should anyone find out. And it explained the importance of treating sex crimes consistently, regardless of the gender of the victim and the perpetrator. For these reasons, we find the district court did not abuse its discretion in denying Butler a dispositional departure.

While Butler also argues on appeal that a dispositional departure was warranted because of prison overcrowding and the COVID-19 pandemic, she failed to raise these arguments when she was sentenced on April 15, 2021. Appellate courts seldom consider

arguments raised for the first time on appeal, and Butler has compounded this problem by failing to explain why we should consider her new arguments as required by Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 35). See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019); *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). We find Butler has waived and abandoned these arguments on appeal.

*The district court did not err by not declaring a mistrial sua sponte.*

Butler next argues, also for the first time on appeal, that the district court erred in failing to declare a mistrial sua sponte. She points to a series of questions the prosecutor asked Butler about Butler's boyfriend, D.M. Butler claims that, through this line of questioning, the prosecutor made the jury aware of the fact that her boyfriend had pleaded guilty to, and was convicted of, intimidation of a witness based on contact he had with S.L. Butler argues these questions were highly prejudicial in that they implied her guilt based on her boyfriend's conviction.

The prosecutor's line of questioning was as follows:

"Q.  And let's just say after October, your interview with law enforcement in 2018, fair to say that you discuss your frustrations about this investigation with D[.M.]?
"A. [Butler:]     I discussed a little bit of it with him, yes. He's my support at home.
"Q.  And you're aware that D[.M.] had some issues regarding his contact with [S.L.]?
"A.  Yes.
"Q.  To the point that he was charged and pled guilty to intimidation of a witness?
     "[Defense Counsel]: Objection, Your Honor. Relevance.
     "THE COURT: Sustained at this point.
"BY [The Prosecutor]:
"Q.  In your conversations with D[.M.] you talked about your upcoming court dates?
"A.  Yeah. He pretty much knew my upcoming court dates, yeah.
"Q.  You talk about scheduling issues with planning hearings and things like that?
"A.  No, I don't think I discussed any of that with him.

7

"Q. Okay. At some point during the pendency of this case there was a hearing that was requiring some evidence and [S.L.] would testify before this trial?

"A. Yes. Couple years ago.

"Q. The hearing was in 2019?

"A. Yeah. I don't really know.

"Q. And your conversation with D[.M.], would it include his legal issues?

"A. No.

"Q. You never once discussed the fact that he had pending cases?

"A. No. Because I didn't know—the only one that I knew of was when [S.L.] contacted him. That's the one you're talking about?

"Q. Well, you're aware that there are some issues regarding D[.M.], because all of that information was provided to your attorney through discovery. Right?

　"[Defense Counsel]: Again, Judge, I'm going to object as to relevance. [D.M.] is not on trial here.

　"THE COURT: Could you repeat the end of that.

　"[Defense Counsel]: [D.M.] is not on trial.

　"THE COURT: Sustained."

Butler concedes that while she objected to these questions below based on relevance, she now claims the evidence was so prejudicial that it should have triggered a mistrial.

Again, issues not brought before the district court are not properly preserved for review. *Johnson*, 309 Kan. at 995. But there are some judicially recognized exceptions to this rule, which Butler claims apply here. See 309 Kan. at 995. She argues two exceptions justify our consideration of this new issue on appeal: (1) This issue presents a question of law on undisputed facts which is finally determinative and (2) it involves her rights to a presumption of innocence and a fair trial, which are both fundamental constitutional rights guaranteed the United States Constitution. *State v. Ward*, 292 Kan. 541, 570, 256 P.3d 801 (2011). The State does not contest the applicability of these exceptions, but

instead, it argues that Butler's failure to specifically lodge a prejudice objection precludes review of this issue.

Under K.S.A. 60-404, evidentiary errors must not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. The contemporaneous objection rule is not satisfied by objecting on one ground at trial and arguing another ground on appeal because doing so would undercut the statute's purpose. *State v. Garcia-Garcia*, 309 Kan. 801, 810, 441 P.3d 52 (2019). The rule exists so that the district court has a chance to consider as fully as possible whether the evidence should be admitted and therefore reduce the chances of reversible error. Furthermore, this rule applies even when a defendant alleges constitutional violations on appeal. *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009)

Our Supreme Court has refused to review the admissibility of allegedly prejudicial evidence when the defendant lodged a timely objection on relevance grounds but did not object as to prejudice. See *Richmond*, 289 Kan. at 428-30. And the court aptly noted that if an appellate court overlooked the lack of an objection, these caselaw exceptions would soon swallow the general statutory rule of K.S.A. 60-404. *State v. Lowery*, 308 Kan. 1183, 1196, 427 P.3d 865 (2018).

We agree that K.S.A. 60-404 controls our consideration of this issue. Butler failed to object to the evidence on the grounds she now raises, thus preventing the district court from considering the issue. If she had properly raised it, the court could have considered the extent of any alleged prejudice and whether any claimed resulting damage could have been removed or mitigated by admonition, instruction, or other curative action. See *Ward*, 292 Kan. at 569-70. Since she did not, we do not have an adequate record to review the issue now on appeal.

Affirmed.